COURT OF APPEALS OF VIRGINIA

Present: Judges Russell, AtLee and Senior Judge Haley

CHRISTOPHER LEE HAMMOCK

v.       Record No. 0160-19-2

HALIFAX COUNTY DEPARTMENT OF
  SOCIAL SERVICES                                MEMORANDUM OPINION*
                                                        PER CURIAM
CHRISTOPHER LEE HAMMOCK                           MARCH 3, 2020

v.       Record No. 0161-19-2

HALIFAX COUNTY DEPARTMENT OF
  SOCIAL SERVICES

FROM THE CIRCUIT COURT OF HALIFAX COUNTY
Kimberley S. White, Judge

(Melissa E. Fraser; Fraser & Freshour, P.C., on briefs), for appellant.

(Matthew W. Evans; Ellen C. Reynolds, Guardian *ad litem* for the
minor children; Gravitt Law Group, PLC, on brief), for appellee.


Christopher Lee Hammock (father) appeals the orders terminating his parental rights to his

children and approving the foster care goal of relative placement/adoption.[1]  Father argues that the

circuit court erred by terminating his parental rights under Code § 16.1-283(C)(1) and finding that

the termination was in the children's best interests.  Father also argues that the circuit court erred in

approving the foster care goal of adoption.  Upon reviewing the record and briefs of the parties,

we conclude that these appeals are without merit.  Accordingly, we summarily affirm the

decision of the circuit court.  See Rule 5A:27.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The foster care plan had a goal of relative placement and a concurrent goal of adoption.

BACKGROUND[2]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cty. Dep't of Human Servs., 63 Va. App. 157, 168 (2014)).

Father and Kristy Williams (mother) are the biological parents of the two children who are the subject of these appeals.[3] The parents have a history of domestic violence and substance abuse. In May 2016, the Halifax County Department of Social Services (the Department) first became involved with the family after the younger child was born substance-exposed. In November 2016, the Department assisted mother in obtaining a protective order against father. On January 6, 2017, the police responded to a call of domestic violence between mother and father. Father was arrested and remained incarcerated until January 26, 2017. Due to the parents' history of substance abuse and domestic violence, the Department removed the children from the parents' custody and placed them in foster care.[4]

The Halifax County Juvenile and Domestic Relations District Court (the JDR court) adjudicated that the children were abused or neglected and entered dispositional orders, which the parents did not appeal. The Department required the parents to cooperate with the

---

[2] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[3] At the beginning of the circuit court hearing, mother agreed to voluntarily terminate her parental rights to the children.

[4] Both children were under the age of two at the time of the removal.

- 2 -

Department and submit to random drug screens. The Department provided supervised visitations, so long as the parents tested negative for illegal substances.[5] The Department referred father to parenting classes, anger management classes, substance abuse counseling, and a psychological and parenting assessment. The Department also required father to obtain a driver's license and suitable housing and employment.

Shortly after father was released from incarceration, the Department scheduled visitation between father and the children, but father refused to visit because he "knew he would be arrested and put in jail for a long time" after the visit. On February 22, 2017, father was arrested for violating the protective order.[6] On April 19, 2017, the Department met with father in jail and reviewed the foster care plan with him. Father told the Department that he was going to be incarcerated "for a while," so there was no need to work on services. At father's request, the Department provided him with photographs of the children.

Father was released from incarceration on June 27, 2017, and the Department met with father in his grandfather's home on July 6, 2017, to explain what he had to do before the children could be returned to his care. The Department scheduled an appointment for father's psychological and parenting assessment, but father was incarcerated again before his appointment.[7] The Department contacted the jail and learned that anger management and parenting classes were not available, and the psychologist would not go to the jail to conduct the psychological assessment. While father was incarcerated, he never requested phone contact with

---

[5] Father tested negative for drugs in January 2017.

[6] Father subsequently pleaded guilty to attempted violation of a protective order, third offense within twenty years, and was sentenced to five years in prison, with four years and six months suspended.

[7] Father was arrested on July 23, 2017, entered Alford pleas to two counts of unlawful wounding, and remained incarcerated until December 8, 2018.

the children nor wrote them letters. He did not contact the Department to inquire about the children. Father, however, did have contact with mother and his grandfather.

On May 16, 2018, the JDR court entered orders approving the foster care goal of relative placement/adoption for the children, and on October 17, 2018, the JDR court entered orders terminating father's parental rights. Father appealed the JDR court orders to the circuit court.

On December 8, 2018, father was released from incarceration; he met with the Department a few days later to determine what he needed to do to obtain custody of the children. The Department advised him to contact his attorney because the JDR court had terminated his parental rights.

On January 7, 2019, the parties appeared before the circuit court. The Department presented evidence that the children were in their third foster home, which was a pre-adoptive placement. The children were "doing great." The children were receiving speech therapy, as well as counseling for behavioral and emotional concerns. The foster mother testified that the children needed structure and stability.

Father testified that he had lived with his grandfather in a three-bedroom home "for the past three years," aside from the time that he was incarcerated. He was employed as a heating and air technician and had been with the same company "on and off" for five years. Father asked the circuit court not to terminate his parental rights, but award him visitation and give him the opportunity to meet the Department's requirements.

After hearing all of the evidence and arguments, the circuit court terminated father's parental rights under Code § 16.1-283(C)(1) and approved the foster care goal of relative placement/adoption. These appeals followed.

ANALYSIS

Father argues that the evidence was insufficient to terminate his parental rights under Code § 16.1-283(C)(1) and that the termination of his parental rights was not in the best interests of the children.[8]  "On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'"  Castillo v. Loudoun Cty. Dep't of Family Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128 (1991)).  "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it."  Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

Termination under Code § 16.1-283(C)(1) requires clear and convincing evidence that

> [t]he parent [has] . . . without good cause, failed to maintain
> continuing contact with and to provide or substantially plan for the
> future of the child for a period of six months after the child's
> placement in foster care notwithstanding the reasonable and
> appropriate efforts of social, medical, mental health or other
> rehabilitative agencies to communicate with the parent or parents
> and to strengthen the parent-child relationship.

"Proof that the parent . . . [has] failed without good cause to communicate on a continuing and planned basis with the child for a period of six months shall constitute prima facie evidence of this condition."  Id.

---

[8] The Department argues that father's assignments of error "should be deemed waived" because he did not file a designation of appendix or a statement of the assignments of error, as required by Rule 5A:25(d).  The Department contends that father's failure to comply with Rule 5A:25(d) "negatively affected [its] ability to prepare appellate argument," but it did not explain how it was "negatively affected."  The Department did not claim that it was "prejudiced by the failure" or that the appendix failed to include "everything germane to the disposition of [father's] appeal."  Wilcox v. Lauterbach Elec. Co., Inc., 233 Va. 416, 420 (1987).  Therefore, we decline to find that appellant's assignments of error are waived.

The children entered foster care after the parents were involved in a domestic violence incident. The police arrested father, and he remained incarcerated until January 26, 2017. When he was released, the Department scheduled visitation between him and the children. On the day of the visit, however, father told the Department that he was not going to attend. He feared that he would be arrested after the visit, and he did not want "to go to jail at that moment." The Department encouraged father to visit with the children anyway, but he refused. Father was arrested a couple of weeks later.

The Department met with father while he was incarcerated and discussed with him what he needed to do under the foster care plan. The Department attempted to discuss establishing services for him, but he told the Department that he was "going to be incarcerated for a while," so there was no need to arrange for services at that time. The Department "is not required to force its services upon an unwilling or disinterested parent." Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 323 (2013) (quoting Harris v. Lynchburg Div. of Soc. Servs., 223 Va. 235, 243 (1982)); see also Logan, 13 Va. App. at 130.

When father was released, the Department met with him at his grandfather's house and again reviewed the foster care plan with him. The Department scheduled an appointment for a psychological and parenting assessment for him. Father, however, was arrested on new charges before he could meet with the psychologist. Father was incarcerated for approximately seventeen months and never contacted the Department or the children. He finally contacted the Department after he was released from incarceration, which was two months after the JDR court had terminated his parental rights.

On appeal, father argues that the Department did not provide him with reasonable services and "isolated" him from the foster care process while he was incarcerated. He contends that from July 2017 until December 2018, the Department "took no steps to help [him] achieve

the goals [it] designed in the foster care plan." During the trial, however, father admitted that he had "voluntarily removed [himself] from the process" when he incurred the new charges in July 2017 because he could not comply with the Department's requirements while he was incarcerated.

The Department was not required to offer father services while he was incarcerated. See Harrison v. Tazewell Cty. Dep't of Soc. Servs., 42 Va. App. 149, 163-64 (2004). This Court has held that "[i]t would be patently unreasonable to require the Department, under such circumstances, to continue to offer services." Id. "[A]s long as he was incarcerated, the Department would have had no avenue available to offer [father] services aimed at assisting him in regaining custody of the child." Id. at 164. The Department had met with father to review the foster care plan in January, April, and July 2017, before he was incarcerated again. Father knew what was required of him and that he could not have his children returned to him if he were incarcerated. Nevertheless, father engaged in conduct that led to two unlawful wounding convictions and his incarceration from July 2017 until December 2018.

Additionally, father did not visit with the children when he had an opportunity to do so in January 2017. The circuit court found that father's refusal to visit with the children at that time was "selfish" and "truly to his own detriment as the dad." By the time of the circuit court hearing, father had not seen the children in two years. Father admitted that he did not contact the Department or the children while he was incarcerated for approximately seventeen months. The circuit court found that father "failed to maintain contact with the children . . . in excess of six months." The circuit court did not err in finding that the evidence was sufficient to terminate father's parental rights under Code § 16.1-283(C)(1).

At the time of the circuit court hearing, the children had been in foster care for twenty-four months, which the circuit court found was "the majority of their lives."

Furthermore, the circuit court found that the children had special needs and were doing well in a home where "there's rigid structure, where there is a parent there who's not in and out of jail, [and] when there's a parent there who's not engaged in assaultive behavior." Father admittedly was not in a position to assume custody of the children at the time of the circuit court hearing. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett, 62 Va. App. at 322 (quoting Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)). The circuit court did not err in finding that it was in the children's best interests to terminate father's parental rights.

With respect to father's challenge of the foster care goal of adoption, "[o]ur decision to affirm the termination order necessarily subsumes this aspect of his appeal because a preponderance-of-the-evidence standard governs judicial modifications of foster care plans." Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 265 n.3 (2005).

CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.